# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5159-16T1
                A-5160-16T1

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

      Plaintiff-Respondent,

v.

N.S. and M.C.,

      Defendants-Appellants.

_____

IN THE MATTER OF A.C.-S.
and M.C.-S.,

      Minors.

_____

Argued October 3, 2018 – Decided   December 14, 2018

Before Judges Fuentes, Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, No. FN-13-0152-16.

Clara S. Licata, Designated Counsel, argued the cause for appellant N.S. (Joseph E. Krakora, Public Defender, attorney; Clara S. Licata, on the briefs).

Deric Wu, Designated Counsel, argued the cause for appellant M.C. (Joseph E. Krakora, Public Defender, attorney; Deric Wu, on the brief).

Joshua P. Bohn, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney for respondent; Jason W. Rockwell, Assistant Attorney General, of counsel; Alicia Y. Bergman, on the brief).

Nancy P. Fratz, Assistant Deputy Public Defender, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian; Nancy P. Fratz, on the brief).

PER CURIAM

Defendants N.S. (Nina) and M.C. (Mark) are the biological parents of seven-year-old M.C.-S (Michelle) and five-year-old A.C.-S (Adam).[1] They both appeal from the judgment of the Family Part that found they abused or neglected their children on November 10, 2015, by being intoxicated and placing them at risk of imminent danger or substantial risk of harm. We affirm.

We gather the following facts from the record developed before the Family Part.

---

[1] We use pseudonyms to refer to the parents and their children to protect their privacy and the confidentiality of these proceedings. R. 1:38-3(d)(12).

On November 10, 2015, the Division of Child Protection and Permanency (Division) executed an emergent removal of the children after responding to a referral from the Vice-Principal of the children's elementary school. The Division caseworker who responded to the referral found both parents were inebriated and incapable of safely parenting these two young children.

On November 13, 2015, the Division filed a verified complaint and order to show cause (OTSC) alleging defendants' alcohol abuse placed the children in immediate risk of physical and psychological harm constituting abuse or neglect under N.J.S.A. 9:6-8.21(c)(4). In an OTSC entered November 13, 2015, the Family Part granted the Division legal and physical custody of the children, assigned the Office of the Public Defender to represent defendants, and assigned the Office of the Law Guardian to represent the children. The court also ordered defendants: (1) submit to substance abuse evaluations as arranged by the Division and comply with any recommendations made by the evaluators; and (2) submit to psychological evaluations. The court also ordered the Division to submit a replacement plan pursuant to N.J.S.A. 30:4C-53.3 before the next scheduled court date and contact any prior caregivers to determine "whether placement there is an option."

A-5159-16T1

Pursuant to N.J.S.A. 9:6-8.44, the Family Part conducted a fact-finding hearing over a three-day period to determine whether the children had been abused or neglected as defined in N.J.S.A. 9:6-8.21(c)(4). To meet its burden of proof, the Division called three witnesses. Grace Klauber was the caseworker who responded to the referral from Gavin McGrath, the elementary school's Vice-Principal. In his referral, McGrath reported he received a complaint that Nina has a substance abuse problem with alcohol, has been seen intoxicated while caring for the children, and has permitted the children to be unsupervised outside the residence at eleven o'clock at night.

Klauber testified she responded to Nina's residence at 3:19 p.m. on November 10, 2015. When she arrived, she saw Mark and another man on the front of the residence drinking 24-ounce cans of beer. Mark told Klauber that Nina had gone to pick up Adam and Michelle from school; he expected she would return in twenty minutes. Klauber testified Mark slurred his words when he spoke. Klauber decided to leave at this point and return later when Nina was present. However, at 3:45 p.m. that same day, the Division received a second referral from Vice-Principal McGrath that Nina had been to his office at 3:30 p.m. claiming Michelle was missing.

A-5159-16T1

At the fact-finding hearing, McGrath testified Nina had an odor of alcohol, was incoherent and unable to comprehend what he was saying to her. McGrath was also particularly concerned that Nina arrived at his office with five-year-old Adam more than one hour after the end of the school day. When the school nurse called the emergency contact phone number on record, she discovered seven-year-old Michelle was at home in her room reading a book. McGrath testified that Nina became agitated during their conversation, especially after she learned Michelle was home alone. McGrath testified he feared Nina was under the influence of alcohol and contacted the school resource officer to drive her and Adam home.

At her supervisor's direction, caseworker Klauber reported to the elementary school at approximately 4:00 p.m. McGrath informed her that Nina had been there to pick up the children, despite the fact that Michelle was already at home. According to McGrath, Nina was "hammered, reeked of alcohol, and [was] stumbling." Klauber testified she left the school and returned to Nina's home because the situation had become emergent. Klauber arrived at defendants' residence at 4:10 p.m. and knocked on the door. Klauber testified she saw "a female child," whom she deduced was Michelle, come to the front window located next to the front door of the house. She identified herself as a

Division caseworker and asked Michelle if her parents were home. When the child responded "yes," Klauber asked her "if she would go get them to answer the door . . . [.]" However, the child "just stood there." Klauber continued to ask Michelle to get her father or mother to answer the door until the child stated her mother was "in the shower." When she asked Michelle to get her father, the child again just stood there.

In an effort to get the attention of an adult, Klauber testified she continued to knock on the door "loud, as hard as I could so that . . . someone inside would answer." She continued to do this for "ten minutes," each time her knocking got "louder and louder." Inexplicably, no one but Michelle "stood there the whole time." When asked what she planned to do if these efforts proved to be ineffective, Klauber testified:

> A. My plan was if they didn't answer the door I was going to call the police, which I shouted against the door, I'll have to call the police if you don't answer.
>
> Q. And after shouting that what happened?
>
> A. [Mark] had opened the door.
>
> Q. How much time transpired from you shouting that you're going to have to call the police to him opening the door?
>
> A. Not a lot. It was very quick.

Klauber testified that Mark smelled of alcohol when he answered the door and was carrying a grocery bag full of empty bottles. Once inside, Klauber noticed that part of the floor of the house was covered with pet litter and feces and another part was covered with clothing and pieces of garbage. The children's bedroom had clothing and toys on the floor and bed. The kitchen smelled of alcohol and the sink was full of dirty pots and pans; the kitchen counter was wet. When Klauber placed her paperwork on the kitchen table, it became immediately soaked with alcohol.

When Mark came into the kitchen and sat at a table, Klauber noticed his eyes were red and he smelled of alcohol. When she asked Mark if he understood English, he responded he knew "a little bit." Klauber testified she requested the assistance of a Spanish interpreter through "the language line." From this point forward, all of Klauber's interactions with both defendants were through the interpreter provided telephonically by the language line. Klauber told Mark that Nina had gone to pick up the children from school while she was intoxicated. According to Klauber, Mark acknowledged "that the police had brought his wife and his son home." Mark also said that he "went to get his daughter [from school] and brought her home." According to Klauber, Mark did this "[j]ust

because his wife did not bring her home." Finally, Mark admitted to Klauber he drank "a few beers" because it was his day off from work.

Nina came into the kitchen after she finished her shower. Klauber testified Nina held on to the wall in the hallway as she walked toward them; her eyes were red; she smelled of alcohol and slurred her words. When asked to give her children's complete names, Nina repeated their first names "several times," but was unable to provide their last names. She also could not provide the correct birth dates for either of her children; she could not identify the years they were born, or her own birthdate.[2] Mark correctly provided his own birthdate and last name. Both parents could not provide the name of the children's pediatrician because the children visited "the clinic."

The judge found the Division's witnesses credible. In particular, the judge found Vice-Principal McGrath's description of Nina's incoherent demeanor on November 10, 2015 supported McGrath's conclusion that she was highly intoxicated at the time. The judge also found Klauber's conclusion that the children were not safe while in the physical custody of the parents at the time

---

[2] In an attempt to identify her own birth-year, Nina repeated different years a number of times, until she finally settled on "1978." This was incorrect.

was both sound and supported by the credible evidence in the record.  The judge

found:

> Nobody would put their own child -- Nobody would say can you babysit my child for an hour, my five year old or my seven year old, and leave them with someone who was conducting themselves and exhibiting signs of intoxication such as these two parents were.
>
> I find that they, based on the facts, the credible testimony and the items in evidence, [established] that both individuals were highly intoxicated.  I think [Nina] was more impaired than [Mark], but I find that he was also of sufficient level of intoxication such that he did not ensure his children's safety as well.
>
> So I find him equally culpable with [Nina] and I am going to, quite frankly, make a finding that it's a substantiation under Title 9 and I'm going to direct the Division to change its record to substantiated under Title 9.  I am satisfied amply pursuant to . . . [N.J.S.A. 9:6-8.21(c)].

Against this record, defendants now argue the Family Part findings were

improperly influenced by Nina's prior involvement with alcohol.   Independent

of this alleged error, defendants also claim there was insufficient evidence to

prove the consumption of alcohol placed the children in imminent danger of

physical or psychological impairment or substantial risk of harm to support a

finding of abuse or neglect under N.J.S.A. 9:6-8.21(c)(4)(b).  We reject these

arguments and affirm.

9

In an abuse or neglect case, "[t]he fact-finding hearing is a critical element of the abuse and neglect process." N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 264 (App. Div. 2002). As appellate judges, "[w]e have a strictly limited standard of review from the fact-findings of the Family Part judge." N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010). We are bound to defer to factual findings that are based on the Family Part judge's unique opportunity to make first-hand credibility judgments based on observation of the witnesses who testified at this hearing. N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010). Furthermore, because Family Part judges have "special jurisdiction and expertise in family matters," we review factual findings with particular sensitivity to the Family judge's area of expertise. Cesare v. Cesare, 154 N.J. 394, 413 (1998). However, we review questions of law de novo and afford no special deference to the trial judge's legal determinations. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018).

We discern no legal basis to disturb the Family Part judge's factual findings or the legal conclusions he reached therefrom. Title 9 defines abuse or neglect, in relevant part, as

> a child whose physical, mental, or emotional condition
> has been impaired or is in imminent danger of

becoming impaired as the result of the failure of his parent . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court . . . .

[N.J.S.A. 9:6-8.21(c)(4).]

The Supreme Court has emphasized that "[t]he focus of Title 9 'is not the "culpability of parental conduct" but rather "the protection of children."'" New Jersey Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 368 (2017), (quoting G.S. v. Dep't of Human Servs., 157 N.J. 161, 177 (1999)).  Here, the court found defendants failed to exercise "a minimum degree of care" by being highly intoxicated while these young children were in their physical custody. Defendants' intoxicated state consequently placed the children "in imminent danger of becoming impaired."  The Supreme Court has also held that a judge is not required to find the children suffered actual impairment provided the record contains "evidence of imminent danger or substantial risk of harm."  New Jersey Dept. of Children and Families, Div. of Youth and Family Servs. v. A.L., 213 N.J. 1, 22 (2013).  Stated differently, the Division need only prove, by a preponderance of the evidence, the children faced imminent danger of impairment as a result of defendants' conduct.

11

Here, the record is uncontroverted that due to her inebriated state, Nina was unaware Michelle's school day ended more than thirty minutes before she came into Vice-Principal McGrath's office demanding to know her daughter's whereabouts. The record also shows that McGrath believed Nina's intoxication rendered her incoherent and unable to safely care for her younger, five-year-old son. McGrath thus arranged for the resource police officer assigned to the school to transport Nina and Adam to their home. Under these circumstances, Nina's alcohol induced impairment placed five-year-old Adam in imminent danger and substantial risk of harm.

Klauber's testimony describing her attempts to gain access to defendants' residence by knocking on the front door for over ten minutes, while Michelle watched her through a window in a seeming somnambulistic state, also shows how the level of dysfunction that permeated defendants' home affected the children. The judge found both Mark and Nina were under the influence of alcohol and unable to safely parent their children when caseworker Klauber interacted with them on November 10, 2015. In short, the evidence supports the Family Part's conclusion that defendants abused and neglected their children by being under the influence of alcohol while the children were in their care. Under

these circumstances, defendants' inebriation placed their children in imminent risk of harm.[3]  A.L., 213 N.J. at 22.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] In the interest of completeness, we note that on May 18, 2017, the Family Part judge granted defendants' motion for reconsideration and downgraded the finding of abuse or neglect from "substantiated" to "established."

A-5159-16T1